In the Matter of the Claim of ABRAHAM COHN, Respondent. AMERICAN SUGAR REFINING COMPANY OF NEW YORK, Appellant; MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, December 28, 1965.

*Richard E. Costello* for appellant.

*Leon M. Layden* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General,* for Industrial Commissioner, respondent.

HERLIHY, J. The issue on this appeal is whether the claimant, an employee of the subsidiary corporation, who refused to cross the picket lines due to a strike of the parent corporation, is entitled to immediate benefits.

The American Sugar Company of New Jersey (hereinafter referred to as the parent) is engaged in the operation of a sugar refinery in Brooklyn, New York. The American Sugar Refining Company of New York (hereinafter referred to as the subsidiary) is a wholly owned subsidiary, engaged solely in stevedoring operations for the parent. Its longshoremen employees unload and transfer raw sugar from cargo vessels to the adjacent dock of the parent. The sugar is then taken into the parent building where it is processed. The parent and the subsidiary are interdependent and operate as one continuing, flowing process.

The employees of both corporations are members of the International Longshoremen's Union, but, the record suggests, in somewhat different relationships.

There is no serious dispute as to the facts. The employees of both corporations entered through the same gates; they regis-

tered at the same time clock located in the building of the parent; the physical act of payment of wage and salary is made by the parent; the subsidiary's personnel problems appear to be handled by the parent, which also maintains a medical office or infirmary apparently available to the employees of the subsidiary, and the billing, record keeping and other functions necessary to carry on the operations of the subsidiary are performed by the parent. As to this particular claimant, a timekeeper, his office is located in one of the buildings of the parent and the records of employment kept by him are submitted to the parent.

The parent and the subsidiary have the same officers and the parent owns all of the buildings used by both.

The Referee found that "*The credible evidence establishes that* there was no industrial controversy in existence involving the entity for which claimant, the timekeeper, worked. The industrial controversy was between the parent corporation, a separate legal entity, and its employees". (Emphasis supplied.)

Section 592 of the Labor Law provides that before the suspension clause may be invoked, it must be determined that the claimant lost his employment "because of a strike, lockout, or other industrial controversy" and that such strike or other industrial controversy occurred "in the establishment in which he was employed".

The basic reason for the Referee's decision was that the parent and subsidiary were separate legal entities and therefore, claimant's employer (the subsidiary) was not a party to the controversy between the parent corporation and its employees. While technically this finding was justified, it should not have concluded the Referee's investigation, for this is merely one of the factors which enters into the question of "establishment".

It is obvious that for business expediency, not labor-management advantage, the different corporations were organized. The subsidiary is owned, controlled, managed and operated by the parent, interdependent and integrated and fits within the framework of "establishment" as outlined by the Court of Appeals in *Matter of Ferrara (Catherwood)* (10 N Y 2d 1, 8) where, after considering the principle which governed the enactment of the section and that it must be narrowly construed to carry out the broad humanitarian objectives, it was stated: "So read, it is evident that the term ' establishment ' is to be defined in geographic terms rather than in terms of corporation organization or exercise of management powers and functions."

While the facts in that case involved only one employer (National Air Lines), the principle was applied simultaneously to several different factual situations. (*Matter of Curatalo*

[*Catherwood*], 10 N Y 2d 10; *Matter of Wentworth* [*Catherwood*], 10 N Y 2d 13.) Benefits were allowed when the industrial controversy was at another establishment. *Matter of Gilmartin (Catherwood)* (10 N Y 2d 16) is somewhat analogous to the present facts where there were two distinct legal entities owned by the same individual but different in that the entities occupied separate premises. In *Matter of Lasher (Corsi)* (279 App. Div. 505, 507), where nonparticipating employees were laid off due to a strike in the establishment, this court said: "Under the Unemployment Insurance Law adopted in this State, it is of no consequence whatever that claimants were not on strike; that they were not aiding the strike, financially or otherwise; that they were employed in a separate branch of work, or that they lost their employment through no fault of their own. Such elements were significantly omitted by the Legislature when our statute was enacted." We reversed and remitted for further findings.

In *Matter of George (Catherwood)* (14 N Y 2d 234), benefits were allowed where in a nationwide strike, locals settled, one by one, even though they were unemployed as the result of the strike in some local which had not settled. With reference to the *Ferrara* case, the court said (p. 240): "Nonparticipants within a struck establishment are subject to the same suspension of benefits as those who are engaged in the industrial controversy."

In *Matter of Carmack (Catherwood)* (19 A D 2d 766, affd. 15 N Y 2d 768), we affirmed the board's finding that the claimants were not entitled to benefits and the distinction which we are now asked to accept is that, in that instance, there were mere divisions of one corporation (General Motors) involved rather than, as here, separate corporations. The court did comment that "the Tarrytown divisions were not separate legal entities" but that was for the purpose of demonstrating the same factual problem we have here, that the "establishment" was so integrated and inseparable "when equated with place and situs" that the terms of corporation organization or exercise or management powers and functions did not control. Our decision was buttressed on a factual situation as, indeed, it is here. Assuming *arguendo* all of the causes advanced by the claimant, the factual findings made by the Referee and affirmed by the board are contrary to the principle enunciated in *Ferrara*. The parent-subsidiary relationship at the same establishment where management and work flow are so integrated, as the present facts reveal, cannot be treated differently than in *Carmack*, a stronger case for allowing benefits in that there the actual admin-

istrative management was separate. We affirmed the board's finding of fact denying benefits.

We would further note that this decision does not go contrary to our holding in *Matter of Freeman (Catherwood)* (9 A D 2d 1008) where the situation as to the industrial controversy was similar but the two employers were separate and had no relationship in common, one to the other, aside from the association of contractor-subcontractor on a State construction project.

While at first blush it might appear that the humanitarian objectives of the statute are not being achieved, the realism of the situation is that as to unemployment insurance there may have been one employer at the same establishment, or so the board could find.

The decisions cited are factually different, but to affirm here, and allow benefits, would be to narrow the interpretation and meaning of section 592, so that in fact and in law it would be ineffective to accomplish its purpose, to wit, that there be a waiting period "so as to avoid imputation that a strike may be financed through unemployment insurance benefits". In this type of social legislation it is difficult, at times, to adhere to a line of demarcation but any distinction should be real and not a technical formality. It is not inappropriate to note that the strike herein involved was settled within the seven-week period, the time limitation provided by the section.

The decision of the Unemployment Insurance Appeal Board should be reversed and the matter remitted for a determination and finding on the question of "establishment".

GIBSON, P. J., REYNOLDS, TAYLOR and AULISI, JJ., concur.

Decision reversed and matter remitted for determination and finding on the question of "establishment", without costs.